1   CARTER WOLDEN CURTIS, LLP
Kirk J. Wolden (SBN 138902)
2   Email: kirk@cwclawfirm.com
1111 Exposition Blvd., Suite 602
3   Sacramento, CA 95815
Telephone: (916) 567-1111
4   Facsimile: (916) 567-1112

**Filed**

5   WYLY~ROMMEL, PLLC
Sean F. Rommel (Will Seek Admission *Pro Hac Vice*)

APR 2 9 2013

6   Email: srommel@wylyrommel.com
James C. Wyly (Will Seek Admission *Pro Hac Vice*)

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

7   Email: jwyly@wylyrommel.com
4004 Texas Boulevard
8   Texarkana, Texas 75503
Telephone: (903) 334-8646
9   Facsimile: (903) 334-8645

10   CORY WATSON CROWDER & DEGARIS, P.C.
F. Jerome Tapley (Will Seek Admission *Pro Hac Vice*)
11   Email: jtapley@cwcd.com
Hirlye R. "Ryan" Lutz, III (Will Seek Admission *Pro Hac Vice*)

Fee paid
SI 99

12   Email: rlutz@cwcd.com
2131 Magnolia Avenue
13   Birmingham, AL 35205
Telephone: (205) 328-2200
14   Facsimile: (205) 324-7896

15   Attorneys for Plaintiff and the Class

16                    UNITED STATES DISTRICT COURT
17              FOR THE NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
18
ROBERT FREAD & RAFAEL CARRILLO,
19   individually and on behalf of those similarly
situated,                                    C V 1 3 - 0 1 9 6 1    HRL
20
                Plaintiffs,                  INDIVIDUAL AND CLASS
21   v.                                      ACTION COMPLAINT

22   GOOGLE, INC.                            JURY DEMANDED

23              Defendant.

24

25

26        Plaintiffs, ROBERT FREAD and RAFAEL CARRILLO file this INDIVIDUAL AND

27   CLASS ACTION COMPLAINT against Defendant Google, Inc. ("Google"), and allege the

28   following:

**PARTIES**

1.   Plaintiff, ROBERT FREAD, is a resident of Hawaii.  He resides in Hau'ula, Honolulu County, Hawaii.

2.   Plaintiff, RAFAEL CARRILLO, is a resident of California.  He resides in Stockton, San Joaquin County, California.

3.   Google, Inc. is a Delaware corporation, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, County of Santa Clara, state of California.

**JURISDICTION AND VENUE**

4.   Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the Plaintiffs' claims arising under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.,* a law of the United States.

5.   This Court has general and specific personal jurisdiction over the Defendant because Google is a resident of California with its principal place of business located in this district.

6.   Pursuant to 28 U.S.C. § 1391, venue is proper in this district because Google is a resident of this judicial district and division, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and division, including much of the unlawful conduct alleged herein.

**NATURE OF SUIT**

7.   Plaintiffs bring this lawsuit against Google for the unlawful and intentional interception and use of Plaintiffs' and Class Members' electronic communications (i.e., e-mails and other personal and Federally-protected data) pursuant to their Google Apps for Education ("Google Apps EDU") accounts, which includes e-mail service through Gmail.  The two types of claims at issue in this lawsuit involve "sent" and "received" e-mails.  "Sent" e-mails are defined as e-mails Plaintiffs and Class Members "sent" from their Google Apps EDU accounts using Gmail.  "Received" e-mails are defined as e-mails Plaintiffs and Class Members "received" through their Google Apps EDU accounts using Gmail.

///

8.     Google services Plaintiffs' @hawaii.edu and @u.pacific.edu e-mail addresses through its Google Apps EDU service and Gmail. Google's intentional interception and use of Plaintiffs' Received and Sent electronic communications are in violation of the Electronic Communications Privacy Act of 1986 (the "ECPA"), 18 U.S.C. §§ 2510 *et seq.* Pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, Plaintiffs assert claims against Google, individually and on behalf of a Class of all persons similarly situated with a Google Apps EDU Gmail account, for the unlawful, intentional, interception and use of their Sent and Received electronic communications.

9.     Google operates an e-mail service known as "Gmail" through its "Google Apps for Education" web-application service. Through "Google Apps for Education," Google contracts with educational organizations throughout the United States to service e-mail accounts for students, faculty, staff, alumni, and members of these organizations. Google services these Google Apps EDU accounts with Gmail. In contrast to regular Gmail users, however, Google does not serve targeted content-based advertising to Google Apps EDU users. Google nonetheless extracts the content and meaning from Plaintiffs' and Class Members' Sent and Received e-mail messages and uses that content for various purposes and for profit.

10.    Using multiple devices, Google intercepts the content and meaning of all Plaintiffs' and Class Members' Sent and Received electronic communications while those e-mails are in transit to the recipient. Google then uses the information and content obtained from the unlawful interception for multiple undisclosed purposes and for profit. This process, in whole or in part, shall be referred to generally throughout this Complaint as Google's "E-mail Content Extraction Process."

11.    Google reads Plaintiffs' and Class members' Received and Sent e-mails.

12.    Google reads Plaintiffs' and Class members' Received and Sent e-mails to collect, create, and generate additional information such as metadata.

13.    From this reading, Google collects "keywords" from Plaintiff's and Class Members' email messages.

///

14.     From this reading, Google collects, extracts, and/or generates metadata consisting of "PHIL Clusters" (Probabilistic Hierarchical Inferential Learner). "PHIL Clusters" represent the meaning inferred from particular words or phrases in Plaintiffs' and the Class' Received and Sent e-mails.

15.     Systems such as PHIL, or similar systems, learn "concepts" by learning an explanatory model of text.

16.     Thus, Google's use of PHIL's concepts are designed and supposed to model the *actual ideas* that occur in Plaintiff's and Class members' mind in creating e-mail content.

17.     From its reading, Google collects, extracts, and/or generates other types of data and metadata.

18.     Google's reading the content of e-mails to generate "PHIL clusters," including those of Plaintiffs and the Class, allow Google to ascertain any information concerning the substance, purport, or meaning of the email for Google's intended and actual use.

19.     From the information intercepted from, *inter alia*, Plaintiffs' and Class members' e-mails and then read, Google creates and then uses  "external e-mail information," for various purposes which include, but are not limited to, topics or concepts derived using the text of the e-mail, topics or concepts derived using an e-mail attachment, and information based upon a user's or sender's profile.

20.     Google uses Google Apps EDU as the quintessential "Trojan horse."  Schools are encouraged to use Google Apps EDU and Google offers Gmail under the guise that the message content will not be processed by Google's advertising systems.  Once Google obtains the school contract, Google unlawfully acquires and collects data from Plaintiffs' and Class Members' email messages.  While certain limitations exist within the Google Apps EDU contract, Google non-the-less uses the unlawfully collected data outside the Google Apps EDU services.  Accordingly, where Google contractually limits its acquisition of data through the Google Apps EDU contracts, it actually collects data, and then uses the acquired data outside the Google Apps EDU service.

///

21.     Plaintiffs have standing to bring this action because: (1) Plaintiffs have been and continue to be injured in fact by Google's invasion of privacy through Google's E-mail Content Extraction Process, which Process in multiple ways through the use of multiple devices, violates the ECPA including 18 U.S.C. § 2511(1)(a) (interception) and 18 U.S.C. § 2511(1)(d) (use); (2) Plaintiffs' injuries are real and actual, and the result of Google's ECPA violations in that Plaintiffs have verified Google's common and serial use of its E-mail Content Extraction Process; (3) the injury is directly attributable to Google's Content Extraction Process, which Process violates the ECPA; (4) Google derives a financial windfall and avoids traffic acquisition costs from its E-mail Content Extraction Process; and, (5) in the event of a favorable decision, ECPA provides Plaintiffs a concrete redress for their harm, including statutory damages and injunctive relief.

## STATEMENT OF FACTS

### Google Apps EDU – Class Allegations

22.     "Gmail" is an electronic communication service operated by Google with over 400 million registered accounts globally.

23.     Google offers a service known as "Google Apps for Education" (sometimes referenced as "Google Apps Education Edition") ("Google Apps EDU").

24.     Through Google Apps EDU, Google contracts with educational institutions/organizations to provide Gmail for students, faculty, staff, and other members. However, the Gmail accounts assigned to the Google Apps EDU users: (1) do not have @gmail.com addresses; and (2) do not receive targeted advertisements.

25.     Google's Apps EDU program has been offered to University of Hawaii, University of the Pacific and thousands of other educational institutions throughout the United States through the use of a uniform written contract to which Google requires all participating institutions/organizations to agree and accept.   The Google Apps EDU Contract which Google uses is essentially a form contract analogous to and containing the same relevant and material terms, conditions and disclosures in each instance of use.  These analogous Google Apps EDU contracts include, *inter alia*, provisions regarding: (1) Google's targeted advertising being

1  limited to only alumni; and (2) Google's performance under the contracts purporting to comply

2  with FERPA by virtue of Google's false and fraudulent description and designation of Google

3  as a "school official" in the contracts.

4       26.    Through its Google Apps EDU contracts with University of Hawaii, University

5  of the Pacific and thousands of other educational institutions/organizations throughout the

6  United States, Google has forced the migration of hundreds of thousands and likely millions of

7  existing dedicated education institution/organization student, faculty and staff e-mail accounts,

8  like Fread's @uhawaii.edu and Carrillo's @u.pacific.edu accounts, to Gmail. As new students,

9  faculty and staff join these educational institutions/organizations throughout the United States,

10  these individuals are forced and required to open dedicated Gmail accounts.

11       27.    Plaintiffs and Class members' Google Apps EDU Gmail accounts are subjected

12  to Google's E-mail Content Extraction Process, wherein Google unlawfully intercepts and uses

13  the content and meaning of plaintiffs' and the Class' Sent and Received e-mail communications.

14       28.    Google does not display targeted advertising to Plaintiffs' and the Class

15  members' email accounts. Yet, Google unlawfully collects the same information from

16  Plaintiffs' and Class Members' email messages.

17       29.    Google's E-mail Content Extraction Process is separate and distinct from, and

18  independent of, necessary spam filtering, anti-virus protection, or malware detection. Google

19  can offer its Google Apps EDU service without intercepting or using Plaintiffs' and the Class

20  members' Received and Sent e-mail through its E-mail Content Extraction Process. Google's

21  acquisition and use of content from Plaintiffs' and the Class members' Sent and Received e-

22  mail is not a necessary incident to the protection of the rights of Google. The industry standard

23  for webmail electronic communication services does not include the interception and/or use of

24  the content of e-mail like Google does. For example, neither Yahoo nor Outlook engages in

25  the interception or use of the content of personal, non-commercial e-mail.

26  ///

27  ///

28  ///

30.     Google enriches itself and profits through the use of data intercepted and extracted from Google Apps EDU users, including data unlawfully obtained from the interception and use of Google Apps EDU users' Sent and Received e-mail. This data is valuable to Google. Google openly claims to investors that there is monetary value in such data, and regularly pays others for what it refers to as "traffic acquisition costs." Through the use of its E-mail Content Extraction Process, Google is able to avoid the payment of otherwise costly "traffic acquisition costs."

31.     Google engages in its E-mail Content Extraction Process without the consent of Plaintiffs and the Class, and otherwise without disclosing this Process to its Google Apps EDU "partners," and/or Plaintiffs or the Class.

32.     The Google Apps EDU Terms of Service do not contain information or disclosures sufficient to obtain Plaintiffs' or Class members' consent under the ECPA. The Google Apps EDU Terms of Service contains an integration clause. Google's Gmail Terms of Service, Privacy Policy, Legal Notice and Program Policy do not include information or disclosure sufficient to obtain Plaintiffs' or Class members' consent under the ECPA. The Gmail Terms of Service contains an integration clause.

33.     Section 10.1 of the Google Apps EDU contract with the University of Hawaii contains a provision which reads: "To the extent that Google has access to 'Education Records,' it is deemed a 'school official,' as each of these terms is defined under FERPA, under this Agreement and will comply with its obligations under FERPA." Plaintiffs are informed and believe that this provision is a uniform, standard provision in all of Google's Apps EDU contracts. By this contract provision, Google purports to comply with FERPA based on Google's contractual designation of itself as a "school official." Google cannot lawfully be a "school official" within the meaning of FERPA, and cannot comply with FERPA's obligations by designating itself a "school official" in its Google EDU Apps contracts. Google is not a "school official" or "staff member" under FERPA, and does not have a "legitimate educational interest" in accessing educational records under FERPA. Google violates FERPA through its interception and use of Plaintiffs' and Class members' Received and Sent e-mail through its

1  Content Extraction Process.

2      34.   Due to the success of Google's Apps EDU program, Google is now by far the
3  most common provider of outsourced email in higher education.

4                     **Experiences of Class Members Fread and Carrillo**

5      *Plaintiff Robert Fread*

6      35.   Plaintiff Robert Fread is a student at the University of Hawaii; his home campus
7  has been Windward Community College but he has also attended classes at the University of
8  Hawaii at Mānoa. He has been a student of the University of Hawaii continuously since
9  January 2011.

10     36.   The University of Hawaii's migration of its e-mail services to Google Apps EDU
11  began in 2009, when the University investigated the possibility of contracting out its e-mail
12  services for its students, faculty, and staff.

13     37.   On June 21, 2010, Google contracted with the University of Hawaii ("the
14  University," or "UH") to provide exclusive e-mail services for all of the UH's students, faculty,
15  and staff. Google's contract with the University is titled "Google Apps Education Edition
16  Agreement" ("Agreement"), stamped "Google Apps Edu Agreement 031809." ("UH Google
17  Apps EDU Contract") Plaintiff Fread is informed and believes that the UH Google Apps EDU
18  Contract is essentially a form contract analogous to and containing the same relevant and
19  material terms, conditions and disclosures a multitude of other Google App EDU contracts
20  Google has entered into throughout the United States including, e.g. with the University of the
21  Pacific, and the California State University and University of California systems. These
22  analogous Google Apps EDU contracts include, *inter alia*, provisions regarding: (1) Google's
23  targeted advertising being limited to only alumni; and (2) Google's performance under the
24  contracts purporting to comply with FERPA by virtue of Google's false and fraudulent
25  description and designation of Google as a "school official" via a defined term in the contracts.

26     38.   Through the UH Google Apps ECU Contract, Google services the
27  "@hawaii.edu" email accounts provided to all students, faculty, and staff of UH, including
28  plaintiff Fread.

1    39.    @hawaii.edu is the official—and often exclusive—form of communication by
2    and to UH for UH's students, faculty, and staff.

3    40.    In May of 2011, the University sent emails to @hawaii.edu account holders
4    informing them of the forced migration of their e-mail service to Google Apps EDU.

5    41.    On September 12, 2011, Fread received notice that his student e-mail account
6    would migrate to Google Apps EDU on September 24, 2011, without his consent.

7    42.    On January 4, 2012, UH's IT department informed Fread that his e-mail account
8    would migrate to Google Apps EDU against his will on January 24th, 2012.

9    43.    On July 23, 2012, Fread's @hawaii.edu email account was migrated to a Google
10   Apps EDU account without his consent.  For months, Fread refused to use his Google Apps
11   EDU email account but later Fread was forced to use the account in order to send and receive
12   official UH communications.

13   ***Plaintiff Rafael Carrillo***

14   44.    In or about 2010, University of the Pacific ("UOP") located in Stockton,
15   California entered into a contract with Google through which Google agreed to provided e-mail
16   services on behalf of UOP  through it Google Apps for Education program  ("UOP Google Apps
17   EDU Contract").   McGeorge School of Law is part of UOP.  The UOP Google Apps EDU
18   Contract applies to all UOP students, faculty, administrative staff, and alumni, including those
19   affiliated with McGeorge.

20   45.    Plaintiff Carrillo is informed and believes that the Google Apps EDU Contract is
21   essentially a form contract analogous to and containing the same relevant and material terms,
22   conditions and disclosures a multitude of other Google App EDU contracts Google has entered
23   into throughout the United States including, by way of example only, contracts with the UH,
24   and California State University and University of California systems.  These analogous Google
25   Apps EDU contracts include, *inter alia*, provisions regarding: (1) Google's targeted advertising
26   being limited to only alumni; and (2) Google's performance under the contracts purporting to
27   comply with FERPA by virtue of Google's false and fraudulent description and designation of
28   Google as a "school official" via a defined term in the contracts.

46.     Plaintiff Carrillo is informed and believes that at no time before or after entering into the UOP Google Apps EDU Contract has Google disclosed or otherwise notified UOP of Google's Content Extraction Process to which it subjects all UOP student, faculty, administrative staff and alumni e-mail RECEIVED by or SENT to @u.pacific.edu accounts.

47.     Prior to the time performance of the UOP Google Apps EDU Contract began, all existing UOP students, faculty, administrative staff and alumni received all communications from UOP and communicated with UOP through @pacific.edu accounts.  Plaintiff Carrillo is informed and believes the UOP email system which supported @pacific.edu e-mail accounts was operated by UOP itself using a Novell Group Wise platform or server.  At the time performance of the UOP Google Apps EDU Contract began, all UOP students, faculty, administrative staff and alumni were subjected to a forced migration of their @pacific.edu accounts from this then existing system to Google's Gmail service.

48.     This forced migration required all UOP students, faculty, administrative staff and alumni, including Carrillo, to follow a series of prompts which led them through the migration process.  These prompts involved access to a "Welcome to Your New Account" page which included terms and conditions and a privacy policy.  The instructions called for the individual to enter a word in a box and click on something which said words to the effect "I accept" and "continue with my account."  Since Google has been providing its e-mail service to UOP through the UOP Google Apps EDU Contract, new students have been required to open Google serviced @u.pacific.edu accounts through this same process as a condition of their application or enrollment process.  Faculty and administrative staff have been required to do the same as part of their employment process.

49.     Plaintiff Rafael Carrillo attended McGeorge School of Law from August 2009 until his graduation in May 2012.  While he attended McGeorge, Plaintiff was required to maintain a @u.pacific.edu e-mail account through which he Received all official communications from UOP and McGeorge, and through which he has sent all official e-mail to UOP and McGeorge relating to his enrollment.

///

1    50.    In furtherance of the UOP Google Apps Contract, Plaintiff Carrillo was forced to

2    migrate his @pacific.edu account in the manner described above.

3    51.    Until very recently, Plaintiff Carrillo had no idea that in migrating his

4    @pacific.edu account, as required, he was creating what was in reality a Gmail account.

5    52.    Plaintiff did not consent to Google's Content Extraction Process and would not

6    have consented had he been made aware of that process at the time he signed up and created his

7    @u.pacific.edu account, or thereafter.

8    53.    After the forced migration of his @pacific.edu account, Plaintiff Carrillo received

9    communications from UOP and others sent to this account to his @u.pacific.edu address.  These

10   Received electronic communications subjected to Google's Content Extraction Process included

11   the interception and use of content containing, *inter alia*, educational and financial information

12   which plaintiff is informed and believes is private, confidential and protected from disclosure

13   under federal law including FERPA.  Carrillo also Sent e-mail from his @u.pacific.edu account

14   which was subjected to Google's Content Extraction Process.

15   54.    Plaintiff Carrillo never received Google advertising in his @u.pacific.edu

16   mailbox.

17   55.    Google intercepts, reads, acquires, and uses the content of Plaintiffs' and Class

18   Members' "sent" and "received" electronic communication to lower or avoid its "traffic

19   acquisition costs," as defined by Google on page 32 of its 10K filed with the Securities

20   Exchange Commission for the year ending December 31, 2010.  Because Google has no right or

21   license to intercept and use the Plaintiffs' and Class Members' "sent" and "received" email data,

22   Google obtains the information for free in contrast to the acquisition of data for which it

23   compensates third parties in recognized programs.

24   ///

25   ///

26   ///

27   ///

28   ///

1

## CLASS ALLEGATIONS

2      56.     Plaintiffs bring this class action, pursuant to Rule 23(a) and (b)(3) of the *Federal*

3  *Rules of Civil Procedure*, individually and on behalf of all members of the following Class:

4      **All Google Apps for Education users who, through their Google Apps for**
       **Education e-mail account, have Sent or Received e-mail messages up through**
5      **and including the date of class certification.**

6           a.      Excluded from the class are the following individuals and/or entities:

7                   i.      Any and all federal, state, or local governments, including but not

8      limited to their department, agencies, divisions, bureaus, boards, sections,

9      groups, counsels, and/or subdivisions;

10                  ii.     Individuals, if any, who timely opt out of this proceeding using

11     the correct protocol for opting out;

12                  iii.    Current or former employees of Google;

13                  iv.     Individuals, if any, who have previously settled or compromised

14     claims(s) as identified herein for the Class; and,

15                  v.      Any currently sitting federal judge and/or person within the third

16     degree of consanguinity to any federal judge.

17 **A.    Ascertainability**

18     57.     The Class is objectively defined.

19     58.     The Class is ascertainable.

20     59.     A Google Apps EDU user can be identified through the corresponding Google

21 Apps EDU account, by either Google or the institution which has entered into a Google Apps

22 EDU contract with Google.  As such, direct notice can be given to the Class Member *via* email

23 and/or direct mail.

24     60.     The Google Apps EDU accounts contain readily identifiable information as to

25 the account user.

26     61.     Upon Court-approved notice, any Class Member who desires to seek actual

27 damages pursuant to 28 U.S.C. § 2520(C)(2)(a) may opt-out or remain in the Class and be

28 bound by the remedies and results.

**B.    Numerosity**

62.    The Class is so numerous that joinder of all members is impracticable and the Class Members are from multiple states.

63.    The number of Google Apps EDU users which comprise the Class exceeds 100,000 persons.

**C.    Commonality**

64.    There are questions of law or fact common to the class.  These questions include, but are not limited to, the following:

      a.    Whether Google intentionally intercepted, endeavored to intercept, or procured any other person to intercept or endeavor to intercept the Plaintiffs' and Class Members' Sent and Received electronic communications through its E-mail Content Extraction Process.  Inclusive in this common question(s) are the common questions regarding the elements of 18 U.S.C. § 2511(1)(a) and § 2520 based upon the statutory definitions:

          i.    Whether the Plaintiffs' and Class Members' "sent" and "received" emails were electronic communications;

          ii.    Whether Google used an electronic, mechanical, or other device;

          iii.    Whether Google acquired any content of Plaintiffs' and Class Members' Sent and/or Received  e-mails;

          iv.    Whether that content amounted to any information concerning the substance, purport, or meaning of the e-mails;

          v.    Whether Google acted intentionally;

          vi.    Whether Class members consented to Google's interception and use of their e-mail contents;

          vii.    Whether class members can give valid consent given the illegal nature of Google's conduct under federal law;

          vi.    Whether statutory damages against Google should be assessed; and,

vii.     Whether injunctive and declaratory relief against Google should be issued.

b.     Whether Google intentionally used, or endeavored to use, the contents of Plaintiffs' and Class Members' Sent and Received electronic communications derived through it E-mail Content Extraction Process knowing or having reason to know that Google obtained the information through the interception of the electronic communication in violation of 28 U.S.C. § 2511(1). Inclusive in this common question(s) are the common questions regarding the elements of 18 U.S.C. § 2511(1)(d) and § 2520 and based upon the statutory definitions:

i.     Whether the Plaintiffs' and Class Members' Sent and Received e-mails were electronic communications;

ii.     Whether Google used an electronic, mechanical, or other device;

iii.     Whether Google acquired any content of Plaintiffs' and Class Members' Sent and/or Received e-mails;

iv.     Whether that content amounted to any information concerning the substance, purport, or meaning of the e-mails;

v.     Whether Google used the acquired content of e-mails;

vi.     Whether Google acted intentionally;

vii.     Whether Class members consented to Google's use of Sent and/or Received e-mail;

viii.     Whether Class members can give valid consent given the illegal nature of Google's conduct under federal law;

ix.     Whether statutory damages against Google should be assessed; and,

x.     Whether injunctive and declaratory relief against Google should be issued.

///

///

1  **D.    Typicality**

2      65.    Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and the

3  Class are Google Apps EDU users, and: (1) Plaintiffs and Class Members' Sent and/or

4  Received e-mails through their Google Apps EDU accounts;(2) Google intercepted and/or

5  endeavored to intercept and acquired the e-mails' content;(3) Google used or endeavored to use

6  the e-mails' content;(4) neither Plaintiffs nor the Class consented to Google's interception and

7  uses of the e-mails' content; (5) the Google Apps EDU contracts which require and obligate

8  Plaintiffs' and Class Members' affected e-mail accounts to be subjected to Google's Content

9  Extraction Process are uniform, and contain the same relevant and material terms, conditions

10 and disclosures; and,(6) Plaintiffs and the Class Members are entitled to declaratory relief,

11 statutory damages, and injunctive relief as a result of Google's unlawful conduct.

12 **E.    Adequacy of Representation**

13     66.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs'

14 interests do not conflict with the interests of the Class Members. Furthermore, Plaintiffs have

15 retained competent counsel experienced in class action and privacy litigation. Plaintiffs'

16 Counsel will fairly and adequately protect and represent the interests of the Class.

17 **F.    Superiority**

18     67.    Pursuant to Fed. R. Civ. P. 23(b)(3), questions of law or fact common to the

19 Class Members predominate over any questions affecting only individual members, and a class

20 action is superior to other available methods for fairly and efficiently adjudicating the

21 controversy. Given the uniformity of Google's conduct *vis a vis* Plaintiffs and Class members

22 which is alleged to violate the ECPA, class treatment is manageable as to the legal issues and

23 facts presented. Given the small amount in controversy as to each Class member, and the fact

24 that Google conceals the true nature and extent of the their E-mail Content Extraction Process

25 from its Google Apps EDU partners and the Class, the class action procedure provides the only

26 real, viable procedural mechanism for the litigation of the important claims described herein.

27 ///

28 ///

1    **CAUSE OF ACTION—VIOLATIONS OF 18 U.S.C. §§ 2510 *et seq.***

2         68.    Plaintiffs adopt and incorporate each and every allegation of this Complaint as if

3    stated fully herein.

4         69.    Google, as a corporation, is a "person" pursuant to 18 U.S.C. § 2510(6).

5         70.    Google's actions in violation of the ECPA were and remain intentional.

6         71.    Google's actions affect interstate commerce in that: (1) Plaintiffs are residents of

7    Hawaii and California, Sent and Received e-mail in Hawaii and California, and locations

8    outside of Hawaii and California; and, (2) Plaintiffs' use of their Google Apps EDU accounts

9    occurred both within and outside of the States of Hawaii and California.

10        72.    Pursuant to 18 U.S.C. § 2511(1)(a), Google intentionally intercepted, intercepts,

11   or endeavored or endeavors to intercept Plaintiffs' and the Class Members' Sent and Received

12   e-mail through the use of its E-mail Content Extraction Process based on the following:

13              a.    Google acquired(s) the content of: (1) Plaintiffs' and Class Members'

14        Sent and Received e-mails;

15              b.    Plaintiffs' and Class Members' Sent and Received e-mails are electronic

16        communications;

17              c.    Google utilized(s) one or more devices composing of an electronic,

18        mechanical or other device or apparatus to intercept and use the electronic

19        communications through its E-mail Content Extraction Process;

20              d.    Google does not furnish the devices to Gmail or Google Apps EDU

21        users, and users do not use the devices for connection to the facilities;

22              e.    The devices are not used by Google, if operating as an electronic

23        communication service, in the ordinary course of its business as a provider of an

24        electronic communication service; and,

25              f.    Google's interception of Plaintiffs' and Class Members' Sent and

26        Received   electronic communications are: (a) for undisclosed purposes; (b) for the

27        purpose of delivering targeted advertising and other for profit uses; (c) for purposes

28        beyond the Service of Gmail; (d) in violation of its form user agreements;  (e) in

violation of its uniform written disclosures to users; (f) in violation of its Gmail Apps EDU contracts with the University of Hawaii, UOP, and other Google Apps EDU institutions; (g) in violation of the Federal Education and Rights to Privacy Act ("FERPA"); and, (h) not within the ordinary course of business of a provider of an electronic communication service.

73.    Pursuant to 18 U.S.C. § 2511(1)(d), Google intentionally used, uses, or endeavored or endeavors to use the contents of Plaintiffs' and Class Members' Sent  and Received  electronic communications it obtained through its E-mail Content Extraction Process while knowing or having reason to know that Google obtained the information through the interception of the electronic communication in violation of 18 U.S.C. § 2511(1)(a).

74.    Google's interception of and use of the content of Plaintiffs' and Class Members' Sent and Received electronic communications through its E-mail Content Extraction Process was not performed by an employee while engaged in any activity which is necessary incident to the rendition of Gmail or necessary for the protection of the rights or property of Google.

75.    No party to Plaintiffs' and Class Members' Sent and Received electronic communications subject to its E-mail Content Extraction Process consents[ed] to Google's interception or use of the contents of the electronic communications.

76.    Google intercepts[ed]Plaintiffs' and Class Members' Sent or Received  e-mails pursuant to its E-mail Content Extraction Process for the purpose of committing a criminal and/or tortious act in violation of federal and state laws, and as such, Google cannot obtain consent. 18 U.S.C. § 2511(2)(d).

77.    "Gmail" is an "electronic communication service" (as defined by 28 U.S.C. § 2510(15)).

78.    Google Apps users, including Google Apps EDU users, who send and receive emails through Gmail are "user(s)" pursuant to 28 U.S.C. § 2510(13).    A Gmail "user" (as defined by 28 U.S.C. § 2510(13)) receives Gmail through a Gmail or Google Apps EDU account.

1    79.    Google's interception and use of content of Plaintiffs' and Class Members'

2  Received and Sent electronic communications through the use of its E-mail Content Extraction

3  Process is not within the ordinary course of business of an electronic communication service.

4    80.    As a result of Google's violations of § 2511, pursuant to § 2520, Plaintiffs and

5  Class Members are entitled to:

6         a.    Preliminary and permanent injunctive relief to end Google's violations;

7         b.    Appropriate declaratory relief;

8         c.    For Plaintiff and each Class Members, the greater of either (1) $100 a day

9    for each day of violation, or, (2) $10,000; and,

10        d.    Reasonable attorneys' fees and other litigation costs reasonably incurred.

11                          **PRAYER FOR RELIEF**

12    WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, request

13  judgment against Google and the following relief:

14        1.    An order certifying the Class and appointing Plaintiffs and their Counsel

15    to represent the Class;

16        2.    Judgment against Google under all causes of action;

17        3.    Appropriate declaratory relief against Google;

18        4.    Preliminary and permanent injunctive relief against Google;

19        5.    An award of statutory damages to the Plaintiffs and Class Members, for

20    each, the greater of $100 a day for each day of violation or $10,000, whichever is

21    greater;

22        6.    An award of reasonable attorneys' fees and other litigation costs

23    reasonably incurred; and,

24        7.    Any and all other relief to which the Plaintiffs and Class Members may

25    be entitled.

26  ///

27  ///

28  ///

1

**JURY DEMAND**

2    Plaintiffs demands on all claims, causes of action, and remedies pursued by this

3    Complaint.

4

5    Dated:  April 29, 2013                        Respectfully submitted,

6

7                                          By:/s/ Kirk J. Wolden
                                              Kirk J. Wolden (SBN 138902)
8                                             Email: kirk@cwclawfirm.com
                                              CARTER WOLDEN CURTIS, LLP
9                                             1111 Exposition Blvd., Suite 602
                                              Sacramento, CA 95815
10                                            Telephone: (916) 567-1111
                                              Facsimile: (916) 567-1112
11
                                              WYLY~ROMMEL, PLLC
12                                            Sean F. Rommel (Will Seek Admission *Pro Hac
                                              Vice*)
13                                            Email: srommel@wylyrommel.com
                                              James C. Wyly (Will Seek Admission *Pro Hac
14                                            Vice*)
                                              Email: jwyly@wylyrommel.com
15                                            4004 Texas Boulevard
                                              Texarkana, Texas 75503
16                                            Telephone: (903) 334-8646
                                              Facsimile: (903) 334-8645
17
                                              CORY WATSON CROWDER & DEGARIS, P.C.
18                                            F. Jerome Tapley (Will Seek Admission *Pro Hac
                                              Vice*)
19                                            Email: jtapley@cwcd.com
                                              Hirlye R. "Ryan" Lutz, III (Will Seek Admission
20                                            *Pro Hac Vice*)
                                              Email: rlutz@cwcd.com
21                                            2131 Magnolia Avenue
                                              Birmingham, AL 35205
22                                            Telephone: (205) 328-2200
                                              Facsimile: (205) 324-7896
23                                            A Professional Law Corporation

24                                            GILL ELROD RAGON OWEN
                                              & SHERMAN, P.A.
25                                            Chris Travis (Will Seek Admission *Pro Hac Vice*)
                                              Email: Travis@gill-law.com
26                                            Drake Mann (Will Seek Admission *Pro Hac Vice*)
                                              Email: mann@gill-law.com
27                                            425 West Capitol Avenue, Suite 3801
                                              Little Rock, Arkansas 72201
28                                            Telephone: (501) 376-3800
                                              Facsimile: (501) 372-3359

THE TRAMMELL LAW FIRM, PLLC
M. Chad Trammell (Will Seek Admission *Pro Hac Vice*)
Email: chad@thetrammellfirm.com
418 North State Line Avenue
Texarkana, AR 71854
(870) 779-1860 (Telephone)
(870) 779-1861 (Fax)

Attorneys for Plaintiffs and the Class